T.C. Memo. 2017-238

UNITED STATES TAX COURT

EDWARD ARASH JABARI AND CONSTANCE COLWELL JABARI,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11331-14.                     Filed November 28, 2017.

Edward Arash Jabari and Constance Colwell Jabari, pro sese.

Melinda K. Fisher, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Respondent determined deficiencies in petitioners'

2010 and 2011 Federal income tax of $5,270 and $7,978, respectively.

Respondent further determined additions to tax pursuant to section 6651(a)(1) for

**[*2]** failure to timely file returns for 2010 and 2011 of $1,789 and $1,436, respectively, and an accuracy-related penalty under section 6662(a) of $510 for 2011.[1]

After the parties' concessions, the issues remaining for decision are: (1) whether petitioners had smaller amounts of flowthrough income from Colorado Kind Care, LLC (CKC), than they reported on the basis of respondent's audit determinations with respect to CKC; (2) whether petitioners are liable for the additions to tax for failure to timely file under section 6651(a)(1); and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 2011.[2]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]In a stipulation of settled issues, petitioners conceded that they had unreported taxable interest of $90 and $47 for 2010 and 2011, respectively. Petitioners also conceded that they had unreported taxable qualified dividends of $58 and unreported long-term capital gains of $35,083 for 2011. On brief respondent has conceded that petitioners are not liable for self-employment tax of $6,170 and $5,936 for 2010 and 2011, respectively. Respondent's concession results in computational adjustments to, among other things, the determined additions to tax and penalty; we expect the Rule 155 computations will so reflect.

[*3]                                FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference.

CKC's Business Activity

CKC was established in 2009 and was licensed by the State of Colorado to grow and sell medical marijuana. During the tax years in issue CKC maintained two separate locations, one for cultivation and the other for retail sales.

In July 2010 Mrs. Jabari purchased a 53% interest in CKC, and as of December 31, 2011, she owned a 59.6% interest. Although Mrs. Jabari was the majority owner of CKC, she did not participate in the management and day-to-day activities of the business. Instead, because CKC was required to have two people on the premises at all times, Mrs. Jabari worked as needed when an employee failed to show up. During the years in issue Mr. Jabari worked full time for CKC as the general manager.

In 2010 and 2011 Mrs. Jabari received wages from CKC of $209 and $1,332, respectively. In 2010 and 2011 Mr. Jabari received wages from CKC of $6,923 and $14,231, respectively.

**[*4]** <u>Tax Reporting</u>

For the tax years in issue CKC was a partnership not subject to the unified audit and litigation procedures found at sections 6221 through 6233, commonly known as TEFRA.[3]  It filed Forms 1065, U.S. Return of Partnership Income, which were prepared by Jim Marty, a certified public accountant (C.P.A. Marty). The 2010 Form 1065 reported cost of goods sold of $340,610 and an ordinary business loss of $51,051.

In July 2012 CKC's 2010 Form 1065 was selected for audit.  C.P.A. Marty acted as CKC's representative during the audit and worked with respondent's examiner in reviewing CKC's books and records.  In a Form 4605-A, Examination Changes - Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations (Unagreed and Excepted Agreed), dated October 16, 2012, the Internal Revenue Service (IRS) examiner determined cost of goods sold of $70,458 and ordinary business income of $82,397 for 2010.  CKC's 2011 Form 1065, dated March 15, 2013, was prepared in accordance with the examiner's adjustments for 2010 and reported cost of goods sold of $439,320 and ordinary business income of $81,097.

---

[3]TEFRA is the acronym for the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648.

[*5] Petitioners requested and received extensions of time to file their 2010 and 2011 returns. The extended deadline for their 2010 return was October 17, 2011; the extended deadline for their 2011 return was October 15, 2012. Petitioners failed to meet these deadlines. In May 2012 the IRS issued a Notice CP59 informing petitioners that they had failed to file a tax return for 2010, and on November 19, 2012, the IRS prepared a substitute for return under section 6020(b). On December 24, 2012, not having received petitioners' 2011 return, the IRS prepared a substitute for return under section 6020(b).

Petitioners belatedly filed their 2010 and 2011 Forms 1040, U.S. Individual Income Tax Return, on March 19, 2013. The returns, prepared by C.P.A. Marty, reported CKC passthrough income on Schedules E, Supplemental Income and Loss, of $43,670 and $48,334 for 2010 and 2011, respectively. The Schedule E income from CKC as reported on petitioners' returns reflects Mrs. Jabari's distributional share of the ordinary income as reported on the Form 4605-A for 2010 and on CKC's Form 1065 for 2011.

Respondent's Determination

In the notice of deficiency respondent proposed no adjustments to petitioners' reported flowthrough income from CKC. Instead, respondent determined that petitioners had failed to report taxable interest income and self-

[*6] employment tax owed for both 2010 and 2011. Respondent also determined that petitioners had failed to report qualified dividends and capital gains for 2011. Respondent determined that petitioners were liable for additions to tax for failure to timely file a tax return under section 6651(a)(1) for 2010 and 2011, and further determined that petitioners were liable for an accuracy-related penalty under section 6662(a) for 2011.

Petition and Amendment to Petition

While residing in Colorado, petitioners timely petitioned this Court, disputing only the additions to tax, penalty, and interest. In their pretrial memorandum and in a motion for summary judgment, which we denied, petitioners first raised issues about the application of section 280E to CKC's tax reporting. After a trial in Denver, Colorado, petitioners filed an amendment to petition broadly challenging the CKC examination results and arguing, among other things, that section 280E (1) is unconstitutional in that it forces individuals to relinquish their Fifth Amendment rights, (2) creates fictitious income, and (3) requires a presumption that CKC trafficked in illegal drugs, without due process.

OPINION

Although respondent has not proposed any adjustments to petitioners' reported flowthrough income from CKC, petitioners challenge respondent's

**[*7]** determinations with respect to the CKC audit. Because CKC was a non-TEFRA partnership for the years at issue, we have jurisdiction to consider these challenges. See Wadsworth v. Commissioner, T.C. Memo. 2007-46, 93 T.C.M. (CCH) 940, 943 (2007). As discussed below, however, petitioners have not established that respondent erred in his determinations with respect to the CKC audit.

## I.  Burden of Proof

The Commissioner's determinations as set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations wrong. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners bear the burden of proof on new issues raised in their petition and amendment to petition, including the issues with regard to CKC's costs of goods sold and the application of section 280E. See Rule 142(a); see also Haigh v. Commissioner, T.C. Memo. 2009-140, 97 T.C.M. (CCH) 1794, 1799 (2009).

## II.  CKC Flowthrough Income

Petitioners contend that their reported CKC flowthrough income was overstated because CKC had greater costs of goods sold and business expenses than were determined, after applying section 280E, in respondent's audit of CKC.

**[\*8]** Section 280E disallows any deduction or credit for any amount paid or incurred for a trade or business where the "trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances * * * which is prohibited by Federal law".[4] Medical marijuana is a controlled substance within the meaning of section 280E. See Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner, 128 T.C. 173, 181 (2007); see also Gonzales v. Raich, 545 U.S. 1 (2005); United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483 (2001).

We need not and do not address petitioners' challenges to the application of section 280E because they have failed to establish that CKC's business expenses or costs of goods sold were greater than the amounts respondent determined for 2010 and that CKC reported for 2011.

---

[4]Although sec. 280E disallows deductions for the expenses of a business, it does not disallow cost of goods sold. See Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner, 128 T.C. 173, 178 n.4 (2007). Cost of goods sold is not a deduction within the meaning of sec. 162(a) but instead is subtracted from gross receipts in determining a taxpayer's gross income. See Beatty v. Commissioner, 106 T.C. 268, 273 (1996); Max Sobel Wholesale Liquors v. Commissioner, 69 T.C. 477 (1977), aff'd, 630 F.2d 670 (9th Cir. 1980); sec. 1.162-1(a), Income Tax Regs. Sec. 1.61-3(a), Income Tax Regs., provides that in a manufacturing, merchandising, or mining business, "gross income" means total sales, less the total cost of goods sold.

**[*9]** Taxpayers must show their entitlement to amounts claimed as business expenses or cost of goods sold, see Rule 142(a), and must keep sufficient records to substantiate such items, see sec. 6001; Newman v. Commissioner, T.C. Memo. 2000-345, 80 T.C.M. (CCH) 661, 663 (2000). Petitioners did not produce any business records or any other supporting documents to substantiate CKC's business expenses or costs of goods sold. [5]

Under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), if a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer responsible for the inexactitude. The principle of Cohan, which governs a taxpayer's entitlement to deductions, also applies to cost of goods sold. See Goldsmith v. Commissioner, 31 T.C. 56, 62 (1958) (applying principle of Cohan to cost of goods sold). We cannot estimate deductible expenses or cost of goods sold, however, unless the taxpayer presents evidence providing a sufficient basis for making an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis,

---

[5]The only evidence petitioners have offered in this regard is draft proposed amended tax returns for themselves and CKC, which Mr. Jabari said reflect "how we would have filed our returns had * * * [sec. 280E] not been applied". As the Court explained at trial, these draft returns do not constitute evidence as to the correctness of the information contained therein.

**[*10]** any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioners have failed to document CKC's gross sales or to substantiate any expenses or costs relating to any gross sales.  Because there exists no reasonable basis for applying the Cohan rule, it is inappropriate to approximate the amounts of business expenses or costs of goods sold.  Cohan v. Commissioner, 39 F.2d at 543-544.  Accordingly, regardless of the applicability of section 280E petitioners have failed to establish that CKC's business expenses or costs of goods sold are greater than respondent allowed in the Form 4605-A for 2010 and that CKC reported on Form 1065 for 2011.  Consequently, petitioners have failed to show that their flowthrough income from CKC was less than they reported on their 2010 and 2011 returns.

### III.  Addition to Tax for Failure To Timely File

Respondent determined that petitioners are liable for additions to tax under section 6651(a)(1) for failure to timely file their 2010 and 2011 Federal income tax returns.  Section 6651(a)(1) provides for an addition to tax for failure to file a return by the date prescribed unless that failure is due to reasonable cause and not willful neglect.  The Commissioner bears the burden of production with respect to whether it is appropriate to impose the section 6651(a)(1) addition to tax, see sec.

[*11] 7491(c), and the burden of proof is on the taxpayer to establish reasonable cause, United States v. Boyle, 469 U.S. 241 (1985).

Petitioners' 2010 Federal income tax return was due October 17, 2011, and their 2011 Federal income tax return was due October 15, 2012. Petitioners filed both returns on March 19, 2013.[6] In addition, respondent entered into evidence certified transcripts of account showing that petitioners' returns were filed on March 19, 2013. Respondent has met his burden of production.

Petitioners contend that they had reasonable cause for filing their 2010 and 2011 returns late because, they say, they were advised that they should not file those returns until respondent's examination of CKC's 2010 return was complete. We are not convinced. In the first instance, petitioners' 2010 personal income tax return was already about 9 months late when respondent commenced his examination of CKC's returns. Consequently, we do not see how the late filing of petitioners' 2010 return can be blamed on the CKC examination.

Moreover, the testimony of C.P.A. Marty convinces us that petitioners were advised of the requirement for timely filing their returns but chose to file late, after

_____

[6]Petitioners contend that their 2010 and 2011 Forms 1040, as well as CKC's returns, were submitted under duress. The record does not support this allegation; it shows that all of the returns were prepared with the assistance of C.P.A. Marty, in consultation with petitioners and taking into account the input from respondent's examiner.

**[*12]** the CKC examination was concluded, hoping that they could thereby avoid filing amended returns and that any late-filing additions to tax would eventually be waived. Petitioners have not adequately explained, however, why they waited over five months after receiving the CKC examination results to file their already-late returns.[7] Moreover, setting aside any issues dealing with CKC, petitioners had wage and investment income to report on their 2010 and 2011 returns. Petitioners were required to timely file their returns using the best information available and to file amended returns thereafter if necessary. See Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). Petitioners have failed to show reasonable cause for filing their 2010 and 2011 returns late.

Accordingly, we sustain respondent's determination to impose the section 6651(a)(1) additions to tax.

IV. Accuracy-Related Penalty

Respondent determined that petitioners are liable for a 20% accuracy-related penalty pursuant to section 6662(a) and (b)(1) and (2) for an underpayment attributable to negligence or a substantial understatement of income tax for 2011.

---

[7]Respondent's examination changes with respect to CKC's 2010 return were set forth in a Form 4605-A dated October 16, 2012. Those examination changes were the basis for the CKC flowthrough amounts petitioners eventually reported on their 2010 and 2011 returns. Those returns were not filed, however, until March 19, 2013.

**[\*13]** Respondent bears the burden of production with respect to this penalty. See sec. 7491(c). To meet this burden, respondent must produce evidence establishing that it is appropriate to impose this penalty. Once respondent has met his burden of production, the burden of proof is upon petitioners to show that they are not liable for the penalty. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. Failure to include income is evidence of negligence. Gomar v. Commissioner, T.C. Memo. 2013-95, at \*5; see sec. 1.6662-3(b)(1)(i), Income Tax Regs. Petitioners conceded that they failed to report taxable interest, qualified dividends, and capital gains for 2011. Respondent has carried his burden of production with respect to the section 6662(a) penalty for negligence.

Section 6662(a) and (b)(2) imposes the accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. The

[*14] exact amount of petitioners' underpayment will depend upon the Rule 155 computations, in accordance with our findings and the parties' concessions. To the extent those computations establish that petitioners have a substantial understatement of income tax for 2011, respondent has also met his burden of production in this regard. See Prince v. Commissioner, T.C. Memo. 2003-247, 86 T.C.M. (CCH) 283, 288 (2003).

The accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with regard to that portion. Sec. 6664(c)(1). Petitioners have made no attempt to establish reasonable cause and good faith. In fact, with regard to the largest item of omitted income, the capital gain, Mr. Jabari stated: "We believe it was our fault, an unintended omission."

Accordingly, we sustain respondent's determination that petitioners are liable for the section 6662(a) penalty for 2011 for an underpayment due to negligence and, alternatively, to a substantial understatement of income tax insofar as the Rule 155 computations show a substantial understatement.

The Court has considered all of petitioners' arguments, contentions, and statements. To the extent not discussed herein, the Court concludes that they are moot, meritless, or irrelevant.

**[\*15]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.